UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case Number 17-20292

v.                                        Honorable David M. Lawson

DOMINQUE HAYES,

        Defendant.
_____/

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

Before the Court is defendant Dominque Hayes's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Because the relevant factors favor Hayes's position, the Court will grant the motion.

I.

The defendant pleaded guilty to charges of Hobbs Act robbery and conspiracy, 18 U.S.C. § 1951(a), obstruction of justice, 18 U.S.C. § 1512(b), and using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). On April 18, 2018, Judge Avern Cohn sentenced him to concurrent terms of 50 months in prison on the robbery, conspiracy, and obstruction counts, and a consecutive 10-month sentence on the gun count. He has served approximately 26 months or around 43% of the cumulative 60-month prison term, and he presently is confined by the Bureau of Prisons at Fort Dix FCI in New Jersey, a low security facility that houses more than 2,700 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on August 14, 2022.

On May 4, 2020, Hayes sent to the Court his *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. However, the motion was not received and docketed by the Clerk until June 17, 2020. In his motion, Hayes asserted

that he was qualified for release based on his medical conditions including sleep apnea and asthma, for which he was prescribed albuterol sulfate and mometasone furoate. The Court appointed counsel and set deadlines for both sides to complete the briefing on the motion. The opening motion stated that Hayes had submitted a letter to the prison warden asking for compassionate release on April 25, 2020. Appointed counsel requested leave to file excess pages and an extension of time to file a reply, representing that it was necessary essentially to renew the motion for relief to develop fully all available arguments for relief. The reply was filed by counsel on July 6, 2020.

The most recent data disclosed by the BOP indicates that there are 14 active coronavirus cases at the Fort Dix facility, as well as 25 inmates and 5 staff who previously were diagnosed and who now have recovered from the disease. Reports indicate that no inmates or staff have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and

compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden. "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted).

Hayes argues that compassionate release is warranted based on his medical conditions that subject him to a greater of risk of complications should he contract COVID-19. According to his medical records, he is morbidly obese (BMI 59.3), which is nearly double the threshold BMI of 30 recognized by the CDC as increasing risk for coronavirus complications, and he suffers from asthma, which he has had since he was two years old, and for which he is prescribed two different inhalers. The defendant contends that those conditions, as well as his sleep apnea, greatly increase the risk to his health posed by the ongoing coronavirus pandemic.

The government opposed Hayes's early release based on the circumstances of the crimes, which involved a scheme by which Hayes "set up" his pharmacy co-workers to be robbed at gunpoint by others. It also argues that the defendant's medical records do not identify a sufficiently severe risk factor among his conditions, because his asthma is "well controlled." The government also argues that Hayes should not be released because of the danger he poses to the community.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. The defendant also has advanced sufficiently

compelling circumstances to warrant a sentence reduction based on his severe obesity, which is further complicated by his "moderate persistent" asthma and sleep apnea, and which places him at seriously elevated risk from COVID-19 infection. Contrary to the government's position, the defendant's release does not pose a sufficiently serious danger to the community to prohibit his release.

Other courts have documented the devastating effect that the novel coronavirus has visited upon society in general and the criminal justice system in particular. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

"[T]he crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons who are extremely overweight, as the defendant is, face increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The CDC recognizes "moderate to severe" asthma as a significant risk factor for COVID-19 infection, but the defendant only has been diagnosed with "mild persistent" asthma. *See* Medical Report dated May 31, 2019, ECF No. 112, PageID.526 (noting "Asthma: Step 2"); WebMD, Asthma: Causes, Symptoms, Diagnosis, Treatment ("[Rank] 2. Mild persistent asthma. Symptoms three to six times a week. Nighttime symptoms three to four times a month. Asthma attacks might affect activities."), https://www.webmd.com/asthma/what-is-asthma. However, the defendant's obesity alone qualifies as a recognized risk factor, and his asthma further aggravates the risk posed by his excess weight.

The government's position that the defendant is at low or no risk at Fort Dix FCI based on prophylactic measures taken by BOP to address the pandemic is not reassuring in the context of the ongoing presence of active infections among inmates there, along with the recent rapid acceleration of the pandemic among the public at large. Moreover, the BOP's admitted failure to implement any comprehensive prophylactic testing program calls into doubt the undoubtedly optimistic figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly

2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward."). The government's recounting of measures taken by BOP to address the pandemic also is less impressive considering that those measures demonstrably were ineffective at preventing an outbreak that, so far, has involved at least 44 infected inmates and staff.

The defendant has advanced sufficient circumstances to suggest that extraordinary and compelling circumstances warrant a sentence modification, based on the serious risk to his health posed by the ongoing (and recently accelerating) coronavirus pandemic.

Finally, it is reasonable to conclude that Hayes "'is not a danger to the safety of any other person or to the community,' as is required for compassionate release." *Lassister*, No. 17-232, 2020 WL 3639988, at *2 n.1 ("Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that 'the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'"). Although the crimes here were serious and involved the use of guns, Hayes had no criminal history before his present convictions, and the guns were used by others, although Hayes arranged the circumstances under which the robberies were carried out.

Although those circumstances alone do not entirely abate the significant concern for the community posed by his release, he has served a substantial portion of his custodial sentence, and he asks to be released under home confinement, which will mitigate the threat to the community that he now may pose. Moreover, Hayes was released on bond before pleading guilty, was compliant while under pretrial supervision, and has had no infractions during his incarceration at a low security facility. Although he certainly is not the most benign of offenders considered by the Court, neither is he among the most nefarious. Hayes also has expressed remorse for his crimes, and he aptly pleads in his motion that he only hopes the Court will grant relief so that his deserved 60-month prison term does not become *de facto* a sentence of death.

III.

The defendant has established that he is at serious risk in a facility with known infections of COVID-19, and all of the other pertinent factors also weigh favor of his release.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 112) is **GRANTED**.

It is further **ORDERED** that the defendant's term of custody is **REDUCED** to time served. Upon release, the defendant must self-quarantine for a period of two weeks. Thereafter, his term of supervised release shall include a condition requiring him to be placed under home confinement for a period equal to the balance of his now-pretermitted custody term. The Court will enter an amended judgment and commitment.

                                                      s/David M. Lawson
                                                      DAVID M. LAWSON
                                                      United States District Judge

Dated:   July 15, 2020